IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENCORE BANK, N.A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-11-3552 |
| | § | |
| BANK OF AMERICA, N.A., BAC HOME | § | |
| LOAN SERVICING, L.P., AND | § | |
| COUNTRYWIDE HOME LOANS, INC., | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER GRANTING**

**PARTIAL DISMISSAL AND LEAVE TO AMEND**

Pending before the Court in the above referenced cause, alleging Defendants' failure to perform, under the parties' Mortgage Loan Purchase and Servicing Agreement, proper mortgage servicing on multiple pools of mortgage loans sold by Defendants to Plaintiff Encore Bank, N.A. ("Encore"), is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and a motion to strike certain portions of Encore's First Amended Complaint under Federal Rule of Civil Procedure 12(f)(2)(instrument #37), filed by Defendants Bank of America, N.A. ("BofA"), for itself and as successor by merger to BAC Home Loans Servicing, LP ("BAC"),[1] and by Countrywide Home Loans, Inc. ("Countrywide")(collectively

_____

[1] BAC is the mortgage loan servicing division of BofA.

-1-

"BofA[2]").

### Allegations in Encore's First Amended Complaint

The First Amended Complaint (#35) asserts the following causes of action in seven counts: (1) equitable relief--partial rescission; (2) termination rights and specific performance; (3) breach of contract--monetary damages; (4) breach of duty of good faith and fair dealing; (5) breach of fiduciary duty and punitive damages; (6) indemnification and attorneys' fees; and (7) alter ego/successor liability.

In 1998 Countrywide, arguably the most successful mortgage lender in the United States, served as the servicer of mortgage loans and often as the seller of packages of mortgage loans to investors. Encore, then known as Guardian Savings and Loan Association ("Guardian"), a regional savings and loan association located in Houston, Texas, purchased packages of mortgage loans from Countrywide, over which Countrywide retained loan servicing rights and responsibilities in return for compensation in the form of mortgage loan servicing fees, which over time mounted to more than $4.7 million.

On November 6, 1998 Countrywide and Guardian executed a Mortgage Loan Purchase and Servicing Agreement (as amended on March 31, 1999 and February 8, 2001)("the "Agreement," filed under seal

---

[2] Effective as of July 1, 2008, the parent company of BofA, Bank America Corporation, acquired the parent corporation of Countrywide, Countrywide Financial Corporation.

as #2 and #32, and governed by California law under § 8.09 of the Agreement).   Under the Agreement, Countrywide  was to provide a variety of services for all the mortgage loans contained in the Agreement:  as to performing loans, the collection of mortgage payments, property taxes and insurance payments, proper accounting for such amounts, and proper remittance of principal and interest to Guardian (now Encore) as owner of the loans; as to default loans, Countrywide was to enforce the loan obligations, including collection efforts, foreclosure, re-sale of the mortgaged properties, and the proper accounting for and remittance of collected funds to Guardian/Encore.   Under the Agreement Countrywide promised to "employ procedures in accordance with the customary and usual standards of practice of prudent mortgage servicers." Countrywide's specific obligations under the Agreement are defined in the First Amended Complaint, ¶ 12, pp. 4-6.

In 2007-08, when the financial crisis severely impacted the residential mortgage industry, Countrywide's parent, Countrywide Financial, was purchased and merged into the parent company of BofA.  BofA assumed Countrywide's servicing obligations and first combined them with other service obligations under the operations of BAC.  In July 2011 BAC was merged into BofA.  The three Defendants after the 2008 transaction operated jointly and regularly contacted Encore regarding the mortgage loans at issue in this suit and the loan servicing obligations of the three have been

-3-

integrated, merged, and/or assumed so that each entity is liable for the obligations of the others by merger or successor liability or assumption of liability or alter ego or other veil-piercing theory of liability.  Thus they are jointly and severally liable for the obligations of Countrywide under the Agreement.  For the sake of simplifying, the Court henceforth will refer to the parties by the names of their successors (BofA and Encore) and all defendants will be referred to collectively as BofA unless specified otherwise.

In 2009 Encore noted and informed BofA that its default portfolio had not been and was not being serviced in accordance with the terms of the Agreement and that the standards of practice applicable to prudent mortgage loan servicers, including (1) collateral documentation deficiencies were not being cured, (2) standard and customary collection processes were not followed, and (3) the timing of loss mitigation and foreclosure proceedings was improperly delayed.  Despite being notified, BofA did not cure these problems.  Highly concerned, Encore insisted on an audit of the mortgage loan portfolio, as allowed under the Agreement.  The audit, which focused on the default and liquidated loans, revealed systematic failures by BofA to meet its obligations under the Agreement, including the following: (1) frequent failure to record Encore's ownership upon purchase of the mortgage loans and to inform HUD of the transfer of title as to HUD-related mortgages;

(2) failure to initiate loss mitigation and work-out procedures, such as loan modifications, short sales, and deeds-in-lieu; (3) when such loss mitigation procedures were discussed with the mortgagor, failure to decide upon adoption of a loss mitigation approach in an adequate and timely matter; (4) failure to modify loans in a manner to protect the collateral owned by Encore or in a manner that allowed mortgagors to know how to deal with BofA in a mutually effective way, in violation of standards of practice applicable to prudent mortgage servicers; (5) occasional failure to obtain approval from Encore for loan modifications; (6) numerous failures to initiate timely foreclosure proceedings relating to mortgages owned by Encore; (7) improper placement of a hold on foreclosures, purportedly due to a Consent Order with the Office of the Comptroller of Currency ("OCC"), which Encore argues did not justify or excuse BofA's failure to perform or prohibit BofA from taking action on numerous default loans; (8) occasional failure to maintain or provide its counsel with documentation that was necessary to foreclose timely; (9) failure to properly manage third-party attorneys responsible for foreclosure proceedings, resulting in delays and errors, after which BofA transferred the foreclosure proceedings to new attorneys, causing additional delays; (10) stoppage of some pending foreclosures just before sale date due to unapproved loss mitigation reviews and allowing defaulting mortgagors to remain in properties for several years due

to lack of timely and coherent foreclosure processing by BofA; (11) on some loans, failure to obtain and remit private mortgage insurance proceeds to Encore following liquidation of loans that should have qualified for insurance and failure to inform Encore of the eventual denial of insurance by the private mortgage insurance providers; (12) failure to perform required servicing to comply with the FHA program for government guaranteed loans, resulting in the placement of "FHA holds" by BofA on Encore's delinquent government guaranteed loans; and (13) failure to oversee sub-servicers during the loss mitigation, modification, foreclosure, and liquidation processes.

After the audit confirmed Encore's suspicions, it hired counsel, who provided a notice of default and demand under the Agreement by letter dated January 7, 2011. The letter described BofA's defaults and demanded that the mortgage loans be repurchased, reserving all rights under the Agreement.

BofA, claiming that a prior release provided to it by Encore in connection with the sale of a small number of loans to a third party released BofA from all past and future servicing defaults on the mortgage loans retained by Encore, responded by ceasing to provide Encore with information on the status of the mortgage loans that it had previously provided, including the following: (1) monthly delinquent loan status reports; (2) current real estate owned reports; (3) monthly conference calls regarding delinquent

accounts; and (4) contact with the usual investor representatives. These actions deprived Encore of the ability and information required to monitor and manage the mortgage loan assets that it had invested in and for which it bore financial risk. BofA made misrepresentations about whether nonperforming loans were being serviced by proper foreclosure or otherwise, and it sometimes said the loans were subject to a hold in the foreclosure proceedings, but later stated that no hold applied. Because of these loan servicing failures, lack of communication, stonewalling, and the results of the audit, Encore had to file this action on October 23, 2011.

On March 8, 2012 Encore sent BofA a letter (Exhibit B) containing a 44-page memorandum (Exhibit A) detailing multiple loan servicing deficiencies by BofA. The letter invoked a provision of the Agreement allowing for termination of BofA's servicing rights if events of default were not cured within thirty days. Encore received no response to the March 8, 2012 letter within the thirty-day cure period. On April 10, 2012 Encore sent a follow-up letter (Exhibit C), stating that in light of BofA's failure to timely remedy its defaults, Encore was invoking its right to terminate BofA's servicing rights under the Agreement.

According to the pleadings, BofA has acknowledged its systemic servicing failures. A Consent Decree (#35, Ex. D at pp. 19-22), dated April 13, 2011, issued by the OCC and consented to by BofA,

found *inter alia* that BofA failed to devote sufficient financial, staffing, and managerial resources to ensure proper administration of its foreclosure processes; failed to devote adequate oversight, internal controls, policies and procedures, compliance risk management and training; and failed to sufficiently oversee outside counsel and other third party providers handling foreclosure-related services.  #35 at ¶ 22.  The OCC ordered BofA to perform comprehensive remedial steps, including an action that would at minimum address the following : (1) financial resources to develop and implement an adequate infrastructure to support existing and/or future Loss Mitigation and foreclosure activities and ensure compliance with the Order; and (2) organizational structure, managerial resources and staffing to support existing and/or future Loss Mitigation and foreclosure activities and ensure compliance with the Order.  #35, OCC Order, Exhibit D.

For its first cause of action, partial rescission, Encore claims that BofA materially failed to fulfill its contractual obligations, which deprived Encore of the consideration promised it under the Agreement and which entitles it to rescission.  It seeks only "partial" rescission because it does not seek to unwind the Agreement from its commencement in 1998, but only back to 2007 or 2008 when BofA deprived Encore of the consideration (its material and essential servicing obligations) supporting the Agreement. Encore states it will specifically identify the proper date after

discovery.    California  law  allows  for  rescission  when  the consideration  for  a  contract  has  failed  in  whole  or  in  part. California Civ. Code § 1689.

Rescission  is  appropriate  because  BofA  has  been  collecting servicing fees for services not performed or performed well below the  standard  required  under  the  Agreement.    Rescission  is  a feasible  remedy  because  servicing  is  done  on  a  loan  by  loan  basis and  BofA's  fees  are  identifiable  and  severable,  being  deducted  by BofA  from  the  principal  and  interest  otherwise  due  to  be  paid  to Encore  as  owner  of  the  mortgage  loans.    Encore  states  that  it  did not  become  aware  of  the  pervasive  nature  of  the  servicing  failures until  approximately  2009  and  can  only  rescind  up  to  four  years prior  to  the  filing  of  suit,  back  to  the  date  when  the consideration  failed.    Encore  seeks  to  return  the  parties  to  the status  they  would  have  occupied  if  BofA  had  been  required  at  the time  when  consideration  failed  to  return  to  Encore  the consideration  Encore  paid  to  purchase  the  loans  and  the  servicing fees  and  other  sums  collected  by  BofA  from  Encore,  in  return  for which Encore would convey and assign the loans back to BofA.

If  the  Court  finds  that  the  original  payment  for  the  current loan  portfolios  is  not  capable  of  determination,  Encore  requests, as  an  alternative,  relief  that  "would  in  substance  return  the parties  to  their  respective  positions  before  BofA's  failures." Encore  lists  types  of  alternative  relief,  which  does  not  differ

substantially from the relief it has requested for rescission. #35, ¶ 28, pp. 14-15.

Count 2 seeks termination rights under and specific performance of § 7.01 of the Agreement.[3]  Having provided BofA with notice of default and notice that it was terminating BofA's servicing rights, Encore seeks not only to have BofA terminate and transfer its servicing rights on all mortgage loans to Encore, but also to repurchase from Encore the loans that are more than ninety days delinquent, in litigation, or certain FHA/VA loans.  Encore claimed it purchased the loans in reliance on BofA's representation that it would properly service the loans; the intent of the parties

---

[3] The relevant portion of section 7.01 provides,

In case one or more Event of Default by Countrywide shall occur and shall not have been remedied, the Purchaser, by notice in writing to Countrywide may, in addition to whatever rights Purchaser may have at law or equity to damages, including injunctive relief and specific performance, terminate all the rights and obligations of Countrywide under this Agreement and in and to the Mortgage Loans and the proceeds thereof.  On or after the receipt by Countrywide of such written notice, all authority and power of Countrywide under this Agreement, whether with respect to the Mortgage Loans or otherwise, shall pass to and be vested in Purchaser.  Under written request from Purchaser, Countrywide shall prepare, execute and deliver, any and all documents and other instruments, placed in such successor's possession all Credit Files, and do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Mortgage Loans and related documents, or otherwise, at Countrywide's sole expense. Countrywide agrees to cooperate with Purchaser in effecting the termination of Countrywide's responsibilities and rights hereunder, including the transfer to Purchaser, for administration by it, of all cash amounts which shall at the time be credited by Countrywide to the Custodial Account, REO Account or Escrow Account or thereafter received with respect to the Mortgage Loans.

was to exchange loan servicing for the purchase of the mortgage loans.  BofA has frustrated that intent.  Equitable relief is required to do justice between Encore and BofA.  Encore seeks (1) specific performance of Section 7.01 of the Agreement; (2) transfer of all servicing rights on all mortgage loans and REO currently covered by the Agreement (except that BofA should be required to repurchase those mortgage loans and REO covered by the Agreement that (i) are currently over 90 days delinquent on the date of termination or (ii) are in litigation or (iii) are FHA or VA loans where Encore is not registered with HUD or VA as the holder of the loan) and termination of all rights to service or to receive fees and benefits under the Agreement, without any cost to Encore; (3) reimbursement ot Encore of all fees it paid to BofA and all costs, expense of damages incurred by Encore as a result of BofA's improper servicing.

Count 3 claims monetary damages for breach of contract. Encore is entitled to recover, among other damages, its expenses, as authorized under Cal. Civ. Code § 3300.  In particular it seeks service fees paid to BofA during the four years prior to filing suit, amounting to not less than $981,265.77, prejudgment and post-judgment interest, and costs of suit.

Regarding Count 4, breach of duty of good faith and fair dealing, Encore asserts that BofA failed to keep it apprised of the real status of BofA's servicing of the mortgage loans.  California

law implies a duty of good faith and fair dealing in the performance of every contract, which BofA has breached by engaging in practices relating to the Agreement that lacked good faith and fair dealing. Count 4 claims that BofA breached its fiduciary duty in failing to protect Encore as the beneficiary in connection with maximizing the value of the mortgage loans and preserving the value of the loans and underlying collateral. Encore further alleges that BofA acted with malice in stonewalling Encore regarding the status of the servicing, so Encore is entitled to recover punitive damages.

Regarding Count 5's claim for breach of fiduciary duty and punitive damages, Encore alleges that BofA undertook its obligations to Encore Bank "for the benefit" of Encore, that the parties agreed that Encore was relying upon the integrity and ability of BofA to service the mortgage loans properly, with BofA subject to the duty of a fiduciary, and that BofA was required to act with the highest degree of prudence and care.

Relating to Count 6 for indemnification and attorneys' fees, BofA's defaults triggered the provisions set forth in sections 3.03 (fees) and 6.01 (indemnification) of the Agreement

Count 7 alleges that in light of their merged mortgage loan servicing operations, Defendants are now jointly and severally liable for the obligations of Countrywide under the Agreement.

## Standards of Review

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean*

*Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Under Federal Rule of Civil Procedure 12(f),

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

>        (1) on its own; or
>        (2) on motion made by a party either before responding to
>        the pleading or, if a response is not allowed, within 21
>        days after being served with the pleading.

Motions to strike are usually viewed with disfavor and rarely granted since they seek a drastic remedy and are frequently sought merely to delay. *1st United Telecom, Inc. v. MCI Communications Services, Inc.*, Civ. A. No. 3:10-CV-2255-B, 2011 WL 2292265,*1 (N.D. Tex. June 8, 2011). Such motions should be denied if there is any question concerning law or fact. *Id.* "[A] Rule 12(f) motion to dismiss is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983). The court has considerable discretion whether to grant a motion to strike. *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993).

**Defendants' Motion to Dismiss and Motion to Strike (#37)**

Defendants contend that the First Amended Complaint fails to cure the fatal defects of the original Complaint and fails to state a claim upon which relief can be granted as to Encore's claims for Equitable Relief--Rescission (Count 1), Termination Rights and Equitable Relief (Count 2), Breach of Duty of Good Faith and Fair Dealing (Count 4), and Breach of Fiduciary Duty and Punitive Damages (Count 5).

Noting that the financial crisis of 2008 negatively impacted

-16-

the entire economy of the United States, and especially of the residential mortgage industry, Defendants charge that Encore's suit is an attempt to shield itself from the effect of the recession and to avoid investment risks it assumed when it purchased the mortgage loans.  By claiming that Defendants breached a servicing duty, Encore is manufacturing a damage model to place itself in the same economic position it held 2006, thereby sloughing off losses suffered because of the residential mortgage meltdown.

Defendants maintain that Encore's claim that it is entitled to partially rescind the Agreement for failure of consideration because of BofA's failure to perform its servicing obligations fails for two reasons:  (1) although Encore claims it is willing and ready to restore BofA to the status quo, Encore refuses to pay back the benefits it received; and (2) Encore's request for rescission is untimely and barred by the doctrine of laches.

To rescind an agreement, the party seeking rescission must "[r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise." Cal. Civ. Code § 1691(b).  The statute "generally requires that the rescinding party return any consideration received as a condition of rescission before judgment in the rescission action." *Village Northridge Homeowners Ass'n v. State Farm Fire and Cas. Co.*, 50 Cal. 4th 913, 922 (2010), 237 P.2d 598, 602 (Cal. 2010); *Viterbi v.*

-17-

*Wasserman*, 191 Cal. App. 4th 927, 935 (Cal. App. 4 Dist. 2011)(a party seeking rescission must restore the other party to *status quo ante*).  Encore refuses to tender repayment of interest advances paid directly by BofA to Encore, escrow advances paid by BofA for taxes and insurance on properties subject to Encores's loans, or corporate advances for expenses paid by BofA in connection with servicing the loans.  Thus the rescission claim fails.

A party waives its right to rescind an agreement when the delay substantially prejudices the other party.  Cal. Civ. Code § 1693.  *Wilke v. Coinway, Inc.,* 257 Cal. App.2d 126, 140 (Cal. App. 1 Dist. 1967)("The requirement is essentially one of freedom from laches.  Its application depends on whether, under the particular facts, the delay has in any way prejudiced the defendants. [internal citations omitted]").  Encore entered into the Agreement in 1998 and seeks to rescind it back to 2007 or 2008, just before the height of the financial crisis, now that the value and performance of the loans Encore purchased have suffered from the economic downturn, the loans are defaulting, and the value of its collateral is significantly depreciated.  Meanwhile Encore has accepted the benefits of BofA's servicing for the past thirteen years.  Rescission now would be highly prejudicial to BofA.  *See Kornblum v. Arthurs*, 154 Cal. 246, 249 (1908)(refusing to rescind property sale after finding that plaintiff had purchased for speculative purposes "during a time that the real estate market was

feverishly active" and only sought to rescind after the value of the property dropped); *McCray v. Title Ins. & Trust Co.*, 12 Cal. App. 2d 537, 540 (1936)(where plaintiff waited over two years to rescind sale of real property during a serious depression, the court observed, "The value of the lot during said period had seriously depreciated.  With such facts and others in the record before us, we hold that the trial court was justified in finding that plaintiffs had waited too long to rescind, and the right of action here asserted was barred by laches.").

Encore's second claim for Termination Rights and Equitable Relief, i.e., that BofA terminate and transfer its servicing rights on all mortgage loans and then repurchase from Encore those loans that are more than 90 days delinquent, in litigation, or certain FHA/VA loans, fails because Encore is not entitled to the relief it seeks under the Agreement's termination clause.  The Agreement provides that upon receipt of notice of termination, "all authority and power of Countrywide under this Agreement, whether with respect to the Mortgage Loans or otherwise, shall pass to and be vested in Purchaser."  #35, Am. Compl., Ex. A at ¶ 7.01(a) at p. 2 of 91. The Agreement does not contemplate BofA's reimbursement of the servicing fees it received from Encore, selective repurchasing of non-performing loans, payment of "damages" to Encore, or any other relief requested in ¶¶ 24 and 25 of the Amended Complaint.  Instead Sections 4.09, 5.01, and 5.03 of the Agreement expressly provide

that BofA is entitled to make advances of taxes, insurance premiums, principal and interest which were due and unpaid by borrowers on the Mortgage Loans, and costs and expenses incurred by BofA in the performance of its servicing obligations on the properties subject to the Mortgage Loans.  Under Sections 4.05(b) and (c) of the Agreement, BofA is entitled to reimbursement for those advances paid by it.  In sum, Encore is not entitled to the relief it seeks in its second claim for relief.

BofA also maintains that to the extent that Encore contends that it is entitled to termination due to frustration of intent or mistake, the claim fails.  A claim based on frustration of intent only provides an excuse for non-performance of an agreement, not the re-writing of the contract.  *Gold v. Salem Lutheran Home Ass'n*, 53 Cal. 2d 289, 291 (1959)(describing frustration of intent as an defense for non-performance because the events which prevented his performance were not reasonably foreseeable at the time of contracting); *PeopleSoft U.S.A., Inc. v. Softek*, *Inc.*, 227 F. Supp. 2d 1116, 1119 (N.D. Cal. 2002)(same).  Nor does Encore plead any facts demonstrating mistake or that the contract does not express the parties' intent.  *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002)(holding that the doctrine of mistake cannot be used to create a new contract between the parties).  Instead, Encore's allegations negate its claim of mistake since the Agreement reflects an intent to retain loan servicing in connection with the

-20-

purchase of mortgage loans.

Regarding Encore's fourth claim for breach of the duty of good faith and fair dealing based on BofA's failure to keep Encore informed about status of the mortgage loans or problems in servicing the loans, indeed even stonewalling efforts by Encore to discover these matters, BofA maintains that Encore again fails to state a claim because an implied covenant of good faith and fair dealing applies only to the enforcement of the terms of a contract, and not to expansion of the rights or obligations of the parties. *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349-50 (Cal. 2000)("The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made* . . . . It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of the agreement. [emphasis in original]).   "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (Cal. 1995).  "Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." *Id.*

-21-

Encore alleges as the basis for its breach of good faith and fair dealing claim that some time after January 7, 2011 BofA stopped sending Encore "(a) monthly delinquent loan status reports; (b) current real estate owned reports; (c) monthly conference calls regarding delinquent accounts; and (d) contract with the usual investor representative." #35, ¶ 18. Encore argues that while the Agreement calls for monthly delinquency and REO reports in Sections 5.02(a) (monthly reports) and (b) (miscellaneous reports), it does not provide for monthly conference calls or contact with the "usual investor representative." Thus Encore fails to state a claim based on the last two matters.

Fifth, Encore's allegation that BofA breached its fiduciary duty also fails under Rule 12(b)(6). The claim rests on the allegation that BofA undertook its obligations under the Agreement "for the benefit" of Encore. #35, ¶ 44. "[F]iduciary duties among loan participants depend upon the terms of their contract." *Southern Pacific Thrift & Loan Assn. v. Savings Assn. Mortgage Co.*, 70 Cal. App. 4th 634, 638 (1999), *citing First Citizens Fed. Sav. and Loan v. Worthen Bk.*, 919 F.2d 510, 513 (9th Cir. 1990). The Agreement specifically states that BofA undertook its loan administration and servicing obligations as an "independent contract servicer," rather than a fiduciary. #2, Agreement § 4.01. *See City of Hope Nat'l Medical Center v. Genentech, Inc.*, 43 Cal. 4th 375, 389 (2008)(setting aside portion of jury verdict based on

finding of breach of fiduciary duty where contract to develop, patent and market a product provided that defendant "was to be an independent contractor.").

BofA also moves to strike Encore's punitive damages claim for malicious stonewalling under Rule 12(f).  BofA reiterates that Encore cannot state a claim for breach of fiduciary duty, its only tort claim.  Furthermore under California law, punitive damages are available only in an action for the breach of an obligation not arising from contract.  California Civil Code § 3294(a) provides,

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Here, Encore's claims of breaches of various obligations arise out of a contract between the parties, and punitive damages are not available; that BofA's conduct was purportedly malicious makes no difference.  *See Cates Construction, Inc. v. Talbot Partners*, 21 Cal. 4th 28, 61 (Cal. 1999)("in the absence of an independent tort, punitive damages may not be awarded for breach of contract 'even where defendant's conduct in breaching the contract was willful, fraudulent or malicious.'"), *quoting Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 516 (Cal. 1994).

BofA also requests the Court to strike Encore's requests in the portions of the Complaint (#35) indicated below because they are irrelevant to the subject matter of the litigation, immaterial

-23-

or impertinent.  Sections 4.09, 5.01 and 5.03 of the Agreement (#2) expressly provide that BofA is entitled to make advances of taxes, insurance premiums, principal and interest which were due and unpaid by borrowers on the Mortgage Loans, and costs and expenses incurred by BofA in the performance of its servicing obligations on the properties subject to the Mortgage Loans.  The Agreement further provides in Sections 4.05(b) and 4.05(c) that BofA is entitled to reimbursement for advances paid by BofA.  Therefore the Court should strike the following requests:

(1) (¶ 28(a))  "[A]ll existing mortgage loans and REO covered by the Agreement are to be repurchased by BofA at the legal principal balance thereof as of the effective date of the rescission, without deduction for the bid or credit amount received on REO through foreclosure or equivalent process"';

(2) (¶ 28(a)) all "REO covered by the Agreement are to be repurchased by B of A at the legal principal balance [of the mortgage loan] as of the effective date of the rescission, without deduction for the bid or credit amount received on REO through foreclosure or equivalent process";

(3) (¶ 28(b)(ii)) "[T]he interest amount of such P&I Advances be retained by Encore Bank";

(4) (¶ 28(b)(iv)) "[A]ll 'Escrow Advances (which Escrow

-24-

Advances are made by BofA for tax, insurance and other matters related to mortgage loans and REO) be borne by, and not be reimbursed to, BofA";

(5) (¶ 28(c)) "That all servicing fees paid by Encore Bank to BofA on default loans more than 90 days delinquent (at the time of rescission) and paid on REO be reimbursed by BofA to Encore Bank";

(5) (¶ 33(a)) That BofA transfer servicing rights on all mortgage loans and REO "without cost to Encore Bank (including any servicing rights release fees or reimbursement of P&I Advances, Escrow Advances and Corporate Advances . . .";

(6) (§ 33(b)) "BofA should be required to repurchase the mortgage loans and REO covered by the Agreement that (i) are currently over 90 days delinquent (on the date of termination) or (ii) are in litigation, or (iii) are FHA or VA loans where Encore Bank is not registered with HUD or VA as the holder of the loan.  The purchase price shall be the legal principal balance thereof as of the effective date of the repurchase (and as to both mortgage loans and REO, with appropriate credit to BofA for the principal portion of P&I Advances, but without reimbursement for the interest portion of P&I Advances or for the Escrow and Corporate Advances); and that Encore

Bank receive interest on the legal balance of the mortgage loans and REO from the date, if it has occurred, when Encore Bank stopped receiving interest advances thereon through the effective date of the repurchase at prejudgment rate of interest";

(7) (¶ 34) "that all servicing fees paid by Encore Bank to BofA on default loans and REO be reimbursed by BofA to Encore Bank"; and

(8) (¶ 47) requesting damages.

### Encore's Response (#38)

Pointing out that BofA moves to dismiss only four of Encore's claims (Count 1 for Equitable Relief--Partial Rescission, Count 2 for Termination Rights and Specific Performance, Count 4 for Breach of Duty of Good Faith and Fair Dealing, and Count 5 for Breach of Fiduciary Duty and Punitive Damages), Encore argues that the motion should be denied because BofA is wrongly using Rule 12(b)(6) in lieu of summary judgment, without any evidence or legal basis and often based on affirmative defenses not yet pleaded, insufficient to meet BofA's heavy burden of proof for dismissal.[4]  Encore also contends that in discussing Count 2, BofA erroneously relies on language in the Original Complaint which has been superseded by the First Amended Complaint.

---

[4] This Court reviews the Amended Complaint strictly under Rule 12(b)(6) standards, stated earlier in this Opinion and Order.

Regarding Count 1, Encore asserts that BofA now argues that the restoration of the consideration is a condition precedent to seeking a claim of rescission, but fails to cite legal authority for its assertion[5]; instead it cites a case that actually holds that restoration of the consideration is only needed before a judgment can be entered on a rescission claim. *Village Northridge*, 50 Cal. 4th at 921-22. California Civil Code § 1693 states, "A party who has received benefits by reason of a contract that is subject to rescission and who in an action or proceeding seeks relief based upon rescission shall not be denied relief because of a delay in restoring or in tendering restoration of such benefits before judgment unless such delay has been substantially prejudicial to the other party; but the court may make a tender of restoration a condition of its judgment." *Id.* at 929. Similarly California Civil Code § 1691[6] also implies that actual tender of consideration is not required before a pleading or a judgment. It states that a pleading for rescission is deemed to be an offer to

---

[5] BofA replies that Encore ignores its citation to *Viterbi*, 191 Cal. App. 4th at 935 (a party seeking rescission must restore the other party to *status quo ante*.).

[6] Section 1691(b) states in relevant part,

When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both.

restore consideration; logically an offer of restoration is different from a prior tender of consideration. BofA seeks a disguised summary judgment based on laches, which is a fact-based defense, as BofA concedes. Encore complains that BofA conclusorily asserts, with no evidence such as affidavits or deposition testimony, that rescission would be highly prejudicial to it, and any evidence based on facts outside of the complaint would be improper for Rule 12(b)(6) consideration.[7] Such an issue cannot be determined on a Rule 12(b)(6) motion to dismiss. *Wilke v. Coinway, Inc.*, 257 Cal. App. 2d at 1140 ("[Laches'] application depends on whether, under the particular facts, the delay has in any way prejudiced the defendants."). Second, BofA's argument is erroneous also because the pleader of a complaint is not required to anticipate an affirmative defense such as laches and plead facts that negate that defense. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)(failure to "plead around" a likely affirmative defense is typically not a proper basis for dismissal").

BofA now urges that Encore's Count 2 termination claim should fail because Encore is not entitled to the relief it seeks, but BofA ignores Encore's new pleading and cites to the Original Complaint. *See* First Amended Complaint at ¶ 32, citing termination

---

[7] This Court notes that to avoid dismissal under Rule 12(b)(6) Encore does not need documentary evidence, but it must allege facts that would support its claim of substantial prejudice.

provision of the Agreement and simply and properly requesting the Court to enforce the termination provision of the parties' Agreement.   #35 at 16-17 requesting enforcement (specific performance) of Section 7.01 of the Agreement (#2).   The First Amended Complaint also relies on the termination provision stating that Encore's right to terminate is "in addition to whatever rights [it] may have at law or equity to damages . . . ."   If BofA believes the remedies sought by Encore relating to its termination claim cannot be supported, it should file a motion for partial summary judgment as to those particular remedies.   Regardless, Rule 12 motions apply to claims, not to relief.   BofA fails to cite authority for allowing a Rule 12 dismissal of a claim due to seeking relief that is allegedly too broad.

Encore states that it does not understand BofA's argument about Count 4, breach of good faith and fair dealing.   While acknowledging that the cause of action exists, BofA disagrees that it will provide Encore with any additional relief beyond that requested in other Counts.   Encore maintains that multiple claims are routinely made that may not increase the remedy requested in other claims, but that does not require that they be excluded.

Claiming that BofA's argument that Count 5, breach of fiduciary duty, should be dismissed for lack of sufficient relationship between the parties is another disguised summary judgment matter, Encore argues that such a claim may arise for a

-29-

breach of contract and from a related tort committed in connections with the parties' actions while the contract is in effect. *Kangarlou v. Progressive Title Co., Inc.*, 128 Cal. App. 4th 1174, 1178 (Cal. App. 2 Dist. 2005)("Whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded.  If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious.  If unclear the action will be considered based on contract rather than tort." [citations omitted]").  BofA cites parts of the Agreement stating that BofA was to be an independent contract servicer, but fails to cite to other parts that contradict this language and are more specific. Paragraph 44 of #35, addressing loss mitigation, foreclosure, sale and other obligations under the Agreement, states that BofA acknowledges that Encore was a beneficiary of these commitments, that BofA controlled the ability to safeguard these activities, and that Encore was not positioned to protect itself in these areas; the language expressly states that BofA was to undertake these commitments "for the benefit" of Encore.  BofA also acknowledged in the contract that Encore "acts in reliance upon [BofA's] independent status, the adequacy of its servicing facilities . . . it integrity, reputation and financial standing and the continuance thereof."  #2, Agreement, § 6.05.  Where one party cedes control over matters and relies upon another to act on his behalf, and the

other party agrees to do so, a fiduciary relationship is created. *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (Cal. App. 2 Dist. 2003), as modified on denial of rehearing (Mar. 20, 2003)(rev. denied); *Eisenbaum v. Western Resources, Inc.*, 218 Cal. App. 3d 314, 322 (Cal. App. 4 Dist. 1990).   Whether the language here creates a fiduciary duty under the substantive law of California is in dispute here and cannot be determined under a Rule 12(b)(6) review.

Responding to the motion to strike under Rule 12(f), Encore says because it has properly pleaded the breach of fiduciary duty claim, the punitive damages claim is also valid. *Kangariou*, 128 Cal. App. 4th at 1178.   Moreover, Encore is asserting a tort claim in addition to a contract claim.   In addition Encore's claim does not fall into the categories Rule 12(f) establishes for striking: redundant, immaterial, impertinent or scandalous.   As for the requests listed by BofA for striking, the motion to strike is duplicative of the motion to dismiss and the relevancy and materiality of the requests are "uncontestable."

### Defendants' Reply (#39)

Defendants' reply simply repeats the arguments made in the motion to dismiss.

### Court's Decision

California Civil Code § 1689(b)(2),(3), and (4) permit a party to seek rescission for failure of consideration, although the

failure must be "material" or "go to the essence" of the contract.
*Dorado v. Shea Homes Limited Partnership*, No. 01:11-cv-01027 OWW
SKO, 2011 WL 3875626, *9 (E.D. Cal. Aug. 31, 2011), *citing Wyler v.
Feuer*, 85 Cal. App. 3d 392, 403-04 (1978). That "right to rescind"
is available "'even if there has been a partial performance by the
party against whom the right is exercised.'" *Id., quoting Coleman
v. Mora*, 263 Cal. App. 2d 137, 150 (1968).

Nevertheless the Court concludes that as a matter of law
California law does not recognize a claim for **partial** rescission,
such as Encore's Count 1. California Civil Code § 1688 provides,
"A contract is extinguished by reason of rescission." "'Rescission
of a contract must be of the contract as a whole and not in part.
It is the undoing of a thing and means that both parties to the
contract are entirely released as if it had not been made.'"
*Flagship West, LLC v. Excel Realty Partners, L.P.*, 758 F. Supp. 2d
1004, 1021 (E.D. Cal. 2010), *quoting Douglass v. Dahm*, 101 Cal.
App. 2d 125, 128, 223 P.2d 914 (Cal. App. 2d Dist. 1950). "Once a
contract is rescinded, all its provisions cease to have effect."
*Id., citing Larsen v. Johannes*, 7 Cal. App. 3d 491, 501 (1970),
*citing Lemle v. Barry*, 181 Cal. 1, 5 (Cal. 1919); *BTS, Inc. v.
Sonitrol Corp. of Contra Costa*, No. A093591, 2002 WL 234889, *3
(Cal. App. 1 Dist. Feb. 19, 2002)(same). Thus if Encore seeks
rescission, it will have to amend its complaint to assert such a

claim in whole, back to 1998.[8]

Furthermore, to obtain rescission, "'the rule is that the complainant is required to do equity, as a condition to obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . This rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant.'" *Dorado*, 2011 WL 3875626, *14, *quoting Fleming v. Kagan*, 189 Cal. App. 2d 791, 796 (1961). "'The rules that govern tenders are strict and strictly applied.'" *Id., quoting Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 439 (2003).

California courts, in the context of rescission under California Civil Code § 1691, "continually treat tender or at least the allegation of the ability to do so as a necessary part of a valid claim for rescission of a contract." *Davenport v. Litton Loan Servicing, LP.*, 725 F. Supp. 2d 862, 880 (N.D. Cal. 2010)(plaintiff must at least allege that she has offered to tender to support a claim for equitably rescission under section 1691[9];

_____

[8] The Court is aware that in California parties to a contract may agree that a contract is severable. *United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*, 660 F. Supp. 2d 1163, 1190-91 (C.D. Cal. 2009). Nevertheless, the parties do not argue and the Agreement here does not reflect in its language or subject matter that the parties contemplated a remedy of rescission of part of the contract.

[9] Section 1691, as amended in 1961, reads,

RESCISSION, HOW EFFECTED. Rescission, when not effected

-33-

failure to do so means that her state law claim for rescission is not adequately pleaded and must be dismissed with leave to amend), *citing Periquerra v. Meridas Capital, Inc.*, No. 09-4748, 2010 WL 295932, *3 (N.D. Cal. Feb. 1, 2010)("Plaintiffs must allege that they are willing to tender the loan proceeds to the lender.  This is a basic tenet of California contract law."); *Ritchie v. Cmty. Lending Corp.*, Mo. 09-02484, 2009 WL 2581414, *3 (C.D. Cal. Aug. 12, 2009)("[I]t is a 'basic rule' that '[a]n offer of performance is of no effect if the person making it is not able and willing to perform according to the offer.'"; holding that "[w]ithout such an offer and a showing that Plaintiff's offer is meaningful, the Complaint must be dismissed")(*quoting* Cal. Civ. Code § 1495[10]).  *See*

---

> by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:
>
> 1.  He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and
>
> 2.  He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon the condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.

Davenport distinguished a rescission claim under section 1961 from a rescission claim under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.,* which does not require allegation of an ability to tender to survive a motion to dismiss.  725 F. Supp. 2d at 879-80.

[10] Section 1495 provides, "ABILITY AND WILLINGNESS ESSENTIAL. An offer of performance is of no effect if the person making it is

*also Karlson v. American Sav. and Loan Ass'n*, 15 Cal. App. 3d 112, 118 (1971)("Simply put, if the offeror is without the money necessary to make the offer good and knows it the tender is without legal force or effect. [citations omitted]"); *Jacobs v. Bank of America, N.A.*,No. C10-04596 HRL, 2011 WL 250423, *2 (N.D. Cal. Jan. 25, 2011)(granting motion to dismiss with leave to amend because "[nowhere in the complaint does plaintiff allege credible tender of the amount of the secured debt"). The rationale for this rule is that the language of § 1691 requires a party to "[r]estore to the other party everything of value which he has received from him under the contract or *offer* to restore the same . . . . " *Davenport*, 725 F. Supp. 2d at 880.

"'A tender is an offer of performance made with the intent to extinguish the obligation.'" *Rojas v. Countrywide Corp.*, No. CV F 12-1393 LJO JLT, 2012 WL 4363764, *4 (E.D. Cal. Sept. 21, 2012), *quoting Arnolds Management Corp. v. Eischen*, 158 Cal. App.3d 575, 580 (1984)(citing Ca. Civ. Code § 1485); *Still v. Plaza Marina Commercial Corp.*, 21 Cal. App.3d 378, 385 (Cal. App. 5 Dist. 1971). "A tender must be one of full performance . . . and must be unconditional to be valid.'" *Id., citing Arnolds Management*, 158 Cal. App. 3d at 580.  "'Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount.'" *Id., citing Rauer's Law*

---

not able and willing to perform according to the offer."

*& Collection Co. v. Sheridan Proctor Co.*, 40 Cal. App. 524, 525 (Cal. App. 1 Dist. 1919).  "The debtor bears 'responsibility to make an unambiguous tender of the entire amount due or else suffer the consequences that the tender is of no effect.'"  *Id. citing Gaffney v. Downey Savings & Loan Assn.*, 200 Cal. App.3d 1154, 1165 (1988).  Encore's pleadings also fail to satisfy this pleading requirement, a second reason why the rescission claim will be dismissed with leave to amend.

Defendants also contend that although pleading to tender the amount of indebtedness, Encore is not willing or able to restore BofA to the *status quo ante* by tendering repayment of interest advances paid directly by BofA to Encore, escrow advances paid by BofA for taxes and insurance on properties subject to Encores's loans, or corporate advances for expenses paid by BofA in connection with servicing the loans.  The Court notes that not only must the tender be in full and unconditional and the party alleging an offer of tender possess the ability to perform, but the tender must be made in good faith.  Cal. Civ. Code § 1493-95; *Ford v. Lehman Bros. Bank, FSB*, No. C 12-00842 CRB, 2012 WL 2343898, *12 (N.D. Cal. June 20, 2012).[11]  If it chooses to amend, Encore should abide by this requirement.

---

[11] As for the question of waiver and laches, the Court concludes that these factually disputed contentions are not properly resolved on a Rule 12(b)(6) review.  Since the Court has ruled that partial rescission is not cognizable under California law, the issue of prejudice to BofA may be moot.

As for Encore's Count 2 for Termination Rights and Equitable Relief, the Court agrees with BofA's construction of the Agreement in concluding that Encore requests relief it is not automatically entitled to, i.e., servicing fees paid to BofA, repurchase of non-performing loans, advances of taxes, insurance premiums, principal and interest by BofA, and costs and expenses incurred by BofA in performing its servicing obligations on the properties subject to the mortgage loans under Sections 4.09, 5.01, 5.03, and 4.05(b) and (c) of the Agreement. No provisions in the contract indicate such a remedy is required upon termination of the contract by one party or that the parties intended such relief.[12]  Encore may seek damages for breach of contract under its Count 3.

Encore charges in Count 4 that BofA breached its duty of good faith and fair dealing in failing to keep Encore apprised of the status of BofA's servicing of the mortgage loans and problems it

_____

[12]  In contrast, "'[t]he consequence of rescission is not only the termination of further liability, but also the restoration of the parties to their former positions by requiring each to return whatever consideration has been received.'"  *NMSBPCSLDHB v. County of Fresno*, 152 Cal. App. 4th 954, 960-61, 959 61 Cal. Rptr. 2d 425, 429 (Cal. App. 5 Dist. 2007), *quoting Imperial Casualty & Indemnity Co. v. Sogomonian*, 198 Cal. App. 3d 169, 184, 243 Cal. Rptr. 639, 646 (Cal. App. 2 Dist. 1988). *See also Ogden Martin Systems, Inc. v. San Berardino County, Cal.*, 932 F.2d 1284, 1287 (9th Cir. 1990)("In a rescission action, the complaining party may receive restitution for all benefits conferred on the other party, restoring both parties to economic *status quo ante*, Restitution is discretionary with the court however, and is not required even when rescission is ordered."), *citing* Cal. Civ. Code § 1692 and *St. Regis Paper Co. v. Royal Industries*, 552 F.2d 309, 313 (9th Cir.), *cert. denied*, 434 U.S. 996 (1977).  For a cause of action for rescission, Encore might be entitled to such a remedy.

faced relating to the servicing of the loans and that BofA stonewalled Encore's efforts to learn the status of these matters. #35, ¶ 41.  It further asserts, "BofA did not simply breach the Agreement, it engaged in practices relating to the Agreement that lacked good faith and fair dealing." *Id.*

As Defendants have argued, the implied covenant of good faith and fair dealing "'operates to protect the express covenants or promises of [a] contract. . . . [It] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement.'" *Roussel v. Wells Fargo Bank*, No. C 12-04057 CRB, 2012 WL 5301909, *8 (N.D. Tex. Oct. 25, 2012), *quoting Perez v. Wells Fargo Bank, N.A.*, No. C-11-02279 JCS, 2011 WL 380908, *18 (N.D. Cal. Aug. 29, 2011).  Furthermore, "to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated." *Id., citing id.*

Encore claims that at a point after January 7, 2011 BofA failed to provide Encore with (1) monthly delinquent loan status reports; (2) current real estate owned reports; (3) monthly conference calls regarding delinquent accounts; and (4) contact with the usual investor representatives.  The Agreement does require  monthly delinquency and REO reports in Sections 5.02(a) and (b), but it does not provide for monthly conference calls or

contact with the "usual investor representative" are matters outside the terms of the agreement; therefore Encore fails to and cannot identify the specific provision in the Agreement that was thwarted, and the claims of breach of good faith and fair dealing for the last two must be dismissed under Rule 12(b). Encore's vague and conclusory statement, "BofA did not simply breach the Agreement, it engaged in practices relating to the Agreement that lacked good faith and fair dealing," fails to state a plausible claim under Rule 12(b)(6).

Moreover the implied covenant of good faith and fair dealing is a contractual relationship that does not give rise to an independent duty of care. *Ragland v. U.S. Bank Nat'l Assoc.*, 209 Cal App.4th 182, 206 (Cal. App. 4 Dist. September 11, 2012). Because it only assures compliance with the express terms of the contract and does not create new obligations not contemplated by the contract, breach of the implied covenant of good faith and fair dealing does not give rise to tort damages even when the breach was willful, fraudulent or malicious. *Id., citing Cates Construction*, 21 Cal.4th at 61, and *Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal.4th 503, 516, 869 P.2d 454 (1994). Thus any claim Encore may be asserting for punitive damages arising out of the alleged breach of good faith and fair dealing fails to state a

claim under Rule 12(b)(6) and is dismissed.[13]

The breach-of-fiduciary-duty tort claim is based on Encore's allegations that "BofA undertook its obligations to Encore Bank 'for the benefit' of Encore" and "failed in its obligations to protect Encore Bank as the beneficiary in connection with maximizing the value of mortgage loans and preserving the value of the loans and the underlying collateral." #35, Complaint at ¶¶ 44-45. As highlighted by Defendants, the Agreement expressly states that BofA undertook its loan administration and servicing obligations as an "independent servicer." #2, Agreement § 4.01.

To state a claim for breach of fiduciary duty, the plaintiff must allege the existence of a fiduciary relationship, breach of that relationship, and damages resulting from that breach. *Shopoff & Cavalli LLP v. Hynon*, 167 Cal. App. 4th 1489, (Cal. App. 1 Dist. 2009). "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Rose v. J.P. Morgan Chase, N.A.*, No. Civ. 2:12-225 WBS CMK, 2012 WL 1574821, *2 (E.D.

---

[13] BofA asks to have the prayer for punitive damages stricken under Rule 12(f) because (1) Encore fails to state a claim for breach of fiduciary duty because the Agreement expressly states that Bofa was performing its duties as an independent contractor and because its claim arises from contract. While the Court agrees with the bases, it is easier to dismiss the claim for punitive damages for breach of the duty of good faith and fair dealing with prejudice.

Cal. May 3, 2012), *quoting Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 221, 673 P.2d 660 (1983). "A fiduciary is required to give 'priority to the best interests of the beneficiary.'" *Id., citing Oakland Raiders v. Nat'l Football League*, 131 Cal. App. 4th 621, 641 (Cal. App. 6 Dist. 2005), *quoting Children's Television*, 35 Cal. 3d at 222.

Encore does not cite any authority, and the Court has not found one, for the proposition that a fiduciary duty is imposed as a matter of law on a commercial agreement between two financial institutions to purchase loans in exchange for an agreement to provide servicing obligations in return for fees. Instead, it is generally established that an arm's length commercial relationship between a buyer and seller or servicing entity, or a debtor and a creditor, between two parties with business expertise ordinarily does not create a fiduciary duty. *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 222 (1983); *Soriano v. Wells Fargo Bank, N.A.*, Civ. No. 11-00044 SOM/KSC, 2012 WL 1536065, *12 (D. Hawaii Apr. 30, 2012)(and cases cited therein); *Cordero v. America's Wholesale Lender*, No. 1:12-cv-00099-CWD, 2012 WL 4895869, *4 (D. Idaho Oct. 15, 2012). A fiduciary duty does not arise pursuant to a contract merely because one party relies on the other to carry out its obligations because "[e]very contract requires one party to repose an element of trust and confidence to perform." *Wolf v. Superior Court*, 107 Cal. App.

4th 25, 31 (2003).    "'Although parties may create fiduciary relationships by contract, mere contractual relationships, without more, do not give rise to fiduciary relationships.'"  *Id.* at *3, *quoting Sonoma Foods, Inc. v. Sonoma Cheese Factory, LL*, 634 F. Supp. 2d 1009, 1021 (N.D. Ca. 2007).  In the Agreement BofA agreed to provide loan servicing and administration to Encore on pools of mortgage loans that it sold to Encore.  While Encore's allegations in the Amended Complaint employ "buzz words" for a fiduciary relationship (e.g., "for the benefit of," "relying on the integrity and ability of BofA," "highest degree of prudence and care"), Encore has not pleaded any facts demonstrating that BofA agreed to undertake a fiduciary relationship and to give priority to the interests of Encore.  As Defendants point out, "fiduciary duties among loan participants depend on the terms of their contract." *Southern Pacific*, 70 Cal. App. 4th at 638, *citing First Citizens*, 919 F.2d at 513.

Accordingly, for the reasons and to the extent indicated above, the Court

ORDERS that the motion to dismiss specified causes of action is GRANTED, with leave to amend the complaint where permissible as a matter of law.  Encore shall file its Second Amended Complaint within twenty days of entry of this Opinion and Order.  Because the Court has chosen to dismiss rather than strike the allegations in

dispute, the motion to strike is MOOT.

**SIGNED** at Houston, Texas, this  23rd  day of  January , 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE